UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ZHARA FERNANDEZ et al.,

                         Plaintiffs,                    15-cv-6066 (PKC)

        -against-                                       MEMORANDUM
                                                        AND ORDER

ZONI LANGUAGE CENTERS, INC., ZONI
LANGUAGE CENTERS-FLUSHING, LLC, and
ZOILO C. NIETO,

                         Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs Zhara Fernandez, Tanya Chambers, Kenya Brown, Amy Chu, John

Volpe, and Andrew Bullington, individually and on behalf of others similarly situated, bring this

action against defendants Zoni Language Centers, Inc., Zoni Language Centers-Flushing, LLC,

and Zoilo C. Nieto alleging, among other things, that defendants violated the minimum wage and

overtime provisions of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 206(a);

207(a)(1).  Defendants now move to dismiss plaintiffs' First Amended Complaint for failure to

state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), Fed. R. Civ. P.,

arguing that plaintiffs are exempt from the minimum wage and overtime provisions of the FLSA.

For reasons to be explained, defendants' motion to dismiss plaintiffs' FLSA claims is granted.

BACKGROUND

        For the purposes of defendants' motion, all non-conclusory factual allegations

stated in plaintiffs' First Amended Complaint are accepted as true, see Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009), and all reasonable inferences are drawn in favor of the plaintiffs as the

non-movants, see In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).

Plaintiffs are all current or former employees of defendants Zoni Language Centers, Inc., Zoni Language Centers-Flushing, LLC, and Zoilo Nieto.  (Plaintiffs' First Amended Complaint ("FAC") ¶ 2).  Defendants own and operate two English language learning centers located at 22 W. 34th St., New York, NY (Zoni Language Centers, Inc.) and 37-14 Main St., Flushing, NY (Zoni Language Centers-Flushing, LLC).  (FAC ¶¶ 3, 30, 36).  According to plaintiffs, defendant Zoilo Nieto is the owner and manager of Zoni Language Centers Inc. and Zoni Language Centers-Flushing, LLC.  (FAC ¶¶ 4, 28, 31).  In their FAC, plaintiffs bring several claims against defendants: (1) failure to pay the minimum wage under the FLSA and the New York Labor Law (the "NYLL"); (2) failure to pay overtime wages under the FLSA and the NYLL; (3) failure to furnish employees with accurate wage notices pursuant to NYLL § 195(1)(a); and, (4) failure to provide employees with wage statements each pay-cycle pursuant to NYLL § 195(3).  (FAC ¶¶ 168-95).

Each plaintiff worked as an English as a second language ("ESL") teacher at defendants' English language learning centers.  (FAC ¶ 5).  As ESL teachers employed by defendants, plaintiffs followed "strict teaching models," including incorporating speaking, writing, listening, and reading exercises into every lesson plan and teaching from books provided by defendants.  (FAC ¶¶ 41(a)-(b)).  Defendants also required plaintiffs to enforce specific rules of conduct on their students and to give midterm and final examinations.  (FAC ¶¶ 41(c), (p)).  In addition, plaintiffs spent many hours preparing for lessons and grading students' homework, quizzes, and exams.  (See, e.g., FAC ¶¶ 47, 49, 68, 84, 99, 120, 134).  To ensure that plaintiffs were teaching according to defendants' desired methods, defendants observed plaintiffs teaching in their classrooms, required students to fill out surveys rating each plaintiffs' teaching performance, and required plaintiffs to attend staff meetings and workshops for professional

development.  (FAC ¶¶ 41(d)-(f)).  According to plaintiffs, Zoni did not confer educational degrees or their equivalent, continuing educational credits, or professional "licenses" on enrollees that completed ESL courses, but did provide them with certificates.  (FAC ¶¶ 38-39).  And, Zoni did not require its "teachers" to "possess teaching certificates, or to have completed any teaching coursework."  (FAC ¶ 40).

       The gravamen of plaintiffs' complaint is that they, as teachers, performed many hours of work outside of the classroom for which defendants never compensated them.  (See, e.g., FAC ¶¶ 47, 49, 68, 84, 99, 120, 134).  Specifically, plaintiffs claim to have performed anywhere between 4 hours and 15 hours of unpaid work per week, depending on the particular plaintiff and week.  (See, e.g., FAC ¶¶ 48-49, 68-69, 84-85, 99-100, 117-118, 134).  During those hours of allegedly uncompensated work, plaintiffs performed activities integral to their job as ESL teachers, including the aforementioned class preparation and exam and homework grading.  (See, e.g., FAC ¶¶ 47, 67, 83, 98, 116, 133).  Plaintiffs also allege that defendants never provided them with accurate wage statements or notices of wage rates.  (FAC ¶¶ 58, 60, 76, 78, 91, 93, 110, 112, 127, 129, 141, 143).  For the hours each plaintiff spent teaching in class or performing other "paid work," anywhere between 8 hours and 40 hours per week, depending on the particular plaintiff and week, (see, e.g., FAC ¶¶ 48-49, 68-69, 84-85, 99-100, 117-118, 134), defendants paid plaintiffs either $16 or $17 an hour, (FAC ¶¶ 54, 72, 87, 104, 122, 136).

DISCUSSION

I.    Legal Standard.

       Pursuant to Rule 12(b)(6), Fed. R. Civ. P., to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  The Court must examine only the well-pleaded factual allegations, ignoring any legal conclusions, "and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court "may consider all papers and exhibits appended to the complaint, as well as any matter of which judicial notice may be taken."  Hirsch v. Arthur Andersen & Co., 72. F.3d 1085, 1092 (2d Cir. 1995).

II.    FLSA Claims.

Defendants' move to dismiss the FLSA claims relying upon the statute's "professional capacity" exemption.  19 U.S.C. § 213(a)(1).  Plaintiffs assert that the exemption does not apply or, at least, has not been shown to apply at the pleading stage of this case.

"The application of an exemption to the FLSA is an affirmative defense . . . ." Chen v. Major League Baseball Properties, Inc., 798 F.3d 72, 81 (2d Cir. 2015) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 196–97 (1974)).  As an affirmative defense, an FLSA exemption "may be raised in a pre-answer Rule 12(b)(6) motion 'if the defense appears on the face of the complaint.'"  Id. (quoting Iowa Pub. Emps. Ret. Sys. v. MF Global, Ltd., 620 F.3d 137, 145 (2d Cir. 2010)); see also Jones v. Bock, 549 U.S. 199, 215 (2007) ("Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.").  The employer invoking the "exemption to the FLSA bears the burden of proving that the establishment is covered by the exemption."  Chen, 798 F.3d at 82.

The non-conclusory allegations of the 195-paragraph FAC are fulsome in their description of the conditions of plaintiffs' employment.  The amended pleading was filed only

after the review of the defendants' submission of a pre-motion letter outlining the basis for

defendants' reliance upon the exemption.  The FAC, the DOL regulations, the state

Commissioner of Education's regulation and the state certification and accreditation documents

of which the Court may take judicial notice enable the Court to conclude, as a matter of law, that

the "professional capacity" exemption forecloses the plaintiffs' FLSA claims.

    1.  Judicial Notice.

        Defendants ask the Court to take judicial notice of several documents.  See Staehr

v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 426 (2d Cir. 2008) ("[M]atters judicially noticed

by the District Court are not considered matters outside the pleadings.").  Those documents are:

(1) a certificate from the New York State Department of Education concerning Zoni Language

Center, Inc.; (2) a certificate from the New York State Department of Education concerning Zoni

Language Centers – Flushing LLC; and, (3) a certificate received from, and related website

information by, the Accrediting Council for Continuing Education & Training (the "ACCET")

concerning Zoni Language Centers.  (Declaration of Zoilio Nieto in Support of Motion to

Dismiss ("Nieto Decl.") Ex. A-B, E-F).

        Pursuant to Rule 201 of the Federal Rules of Evidence, a court may take judicial

notice, "at any stage of the proceeding," of any fact that is "not subject to reasonable dispute

because it . . . can be accurately and readily determined from sources whose accuracy cannot

reasonably be questioned."  Courts regularly take notice of publicly available documents

including, for example, public disclosures required to be filed with the SEC, see Kramer v. Time

Warner Inc., 937 F.2d 767, 774 (1991), documents retrieved from official government websites,

see Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC, 127 F. Supp. 3d 156, 166 (S.D.N.Y.

2015), and documents evidencing federal enrollments and licenses, see Massachusetts v.

Westcott, 431 U.S. 322, 323 (1977).  Courts may also take judicial notice of information

contained on websites where "the authenticity of the site has not been questioned."  Hotel

Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v.

City of New York Dep't of Parks & Recreation, 311 F.3d 534, 549 (2d Cir. 2002); see also Ligon

v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of information

regarding a prisoner's whereabouts in the New York prison system that is listed in the New York

State Department of Correctional Services website).

   Here, the two certificates from the New York State Department of Education

certify that Zoni Language Centers Inc. and Zoni Language Centers – Flushing, LLC have "met

the requirements for the New York State English as a Second Language School Registry and is

certified to operate."  (Nieto Decl. Ex. A-B).  Plaintiffs do not dispute the veracity or authenticity

of these documents.  As a result, the Court takes judicial notice of the fact that the Zoni

Language Learning Centers at issue here were certified by and registered with the New York

State Department of Education as ESL schools.

   The third document is a certificate of accreditation for Zoni Language Centers

Flushing Campus from ACCET, (Nieto Decl. Ex. E), and a printout from the ACCET website

listing both of the learning centers at issue here as being accredited, (Nieto Decl. Ex. F); see also

http://accet.org/member-institution-directory.  Plaintiffs do not dispute the veracity or

authenticity of these accreditation documents.  Plaintiffs do contend, however, that Exhibit F of

the Nieto Declaration—the ACCET website printout listing the specific learning centers covered

by Zoni's accreditation—is incomplete because it cuts off information describing "Member

Type" and "Initial Accreditation."  Plaintiffs offer Exhibit B from the Declaration of Joshua S.

Androphy in Opposition ("Androphy Decl.") as a complete printout from the ACCET website.

Based on the information contained in the ACCET certificate of accreditation and the ACCET website printout provided by plaintiffs, the Court takes judicial notice of the fact that the Zoni Language Centers at issue here were accredited by ACCET.  Relatedly, because the Court "may take judicial notice on its own," Rule 201 Fed. R. Evid., the Court takes judicial notice of the fact that the United States Department of Education website lists the ACCET as one of the "regional and national accrediting agencies recognized by the Secretary as reliable authorities concerning the quality of education or training offered by the institutions of higher education or higher education programs they accredit."

http://www2.ed.gov/admins/finaid/accred/accreditation_pg6.html.   The US Department of Education website also makes the following statement regarding ACCET: "Scope of recognition: the accreditation throughout the United States of institutions of higher education that offer continuing education and vocational programs that confer certificates or occupational associate degrees, including those programs offered via distance education."  Id.

    2.   The scope of the "Professional Capacity" Exemption of the FLSA.

       Whether employees who teach English as a second language at a privately-owned ESL school qualify for the "professional capacity" exemption of the FLSA does not appear to have been reached by any court within this Circuit.  Circuit precedent provides considerable guidance to district courts applying FLSA exemptions: "[b]ecause the FLSA is a remedial law, exemptions 'are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'"  Chen, 798 F.3d at 81 (quoting Davis v. J.P. Morgan Chase & Co., 587 F.3d 529, 531 (2d Cir. 2009)).  To resolve defendants' motion, the Court must therefore determine whether

Zoni Language Center's employees "plainly and unmistakably" fit the "terms and spirit" of the FLSA's "professional capacity" exemption.  Id.

Section 213(a)(1) of the FLSA states that the minimum wage and overtime provisions of the statute "shall not apply with respect to—any employee employed in a bona fide . . . professional capacity."  19 U.S.C. § 213(a)(1).  The FLSA then grants the Secretary of Labor "broad authority to 'defin[e] and delimi[t]' the scope of the exemption for executive, administrative, and professional employees."  Auer v. Robbins, 519 U.S. 452, 456 (1997) (quoting 29 U.S.C. § 213(a)(1)).  Regulations promulgated by the Department of Labor (the "DOL") explain that:

> The term "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act also means any employee with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment by which the employee is employed.

29 C.F.R. § 541.303(a).  Put simply, an employee is exempt from the minimum wage and overtime provisions of the FLSA if he or she: (1) is "employed . . . as a teacher;" (2) has the primary duty of "teaching . . . in the activity of imparting knowledge;" and, (3) is employed by "an educational establishment."  Id.  Plaintiffs concede that they were employed as "teachers" with "a primary duty of . . . imparting knowledge," but do not concede that Zoni Language Centers are "educational establishment[s]."  (Plaintiff's Memorandum of Law in Opposition ("Memo. in Opposition"), footnote 1).

The DOL's regulations explain that "the term 'educational establishment' means an elementary or secondary school system, an institution of higher education or other educational institution."  29 C.F.R. § 541.204(b).  In other words, there are three ways an organization can qualify as an "educational establishment."  It can be: (1) "an elementary or secondary school

- 8 -

system;" (2) "an institution of higher education;" or, (3) an "other educational institution."  <u>Id.</u>
Defendants do not argue that the Zoni Language Centers qualify as "elementary or secondary
school system[s]" or as "institution[s] of higher education."  <u>Id.</u>  Instead, they exclusively argue
that defendants' language learning centers are "educational establishment[s]" because they fall
within the meaning of the term "other educational institution."  <u>Id.</u>  The applicable DOL
regulation says little to clarify what organizations are "other educational institution[s]," but does
state that:

> the term "other educational establishment" includes special schools
> for mentally or physically disabled or gifted children, regardless of
> any classification of such schools as elementary, secondary or
> higher. Factors relevant in determining whether post-secondary
> career programs are educational institutions include whether the
> school is licensed by a state agency responsible for the state's
> educational system or accredited by a nationally recognized
> accrediting organization for career schools. Also, for purposes of
> the exemption, no distinction is drawn between public and private
> schools, or between those operated for profit and those that are not
> for profit.[1]

<u>Id.</u>

Because plaintiffs have conceded that they are "teachers" with "a primary duty of
. . . imparting knowledge," the only issue that remains regarding whether the "professional
capacity" exemption applies to plaintiffs is whether Zoni Language Centers qualify as
"educational establishment[s]."  29 C.F.R. § 541.303(a).  If they do, plaintiffs are exempt from
the minimum wage and overtime provisions of the FLSA and plaintiffs' FLSA claims should be
dismissed.  19 U.S.C. § 213(a)(1).  <u>Id.</u>  To decide whether Zoni Language Centers are
"educational establishment[s]," the court must engage in two related inquiries.  Can privately-

---

[1] 29 C.F.R. § 541.204(b) appears to use the term "other educational institution" and "other educational
establishment" interchangeably in the section defining the umbrella term "educational establishment" used in 29
C.F.R. § 541.303(a).  The Court only uses the phrase "other educational institution" in this opinion, to avoid
confusion with the umbrella term "educational establishment."

owned ESL schools possibly qualify as "other educational institution[s]" under the language of section 541.204(b)?  And, if so, are the Zoni Language Centers at issue here "other educational institution[s]"?

a.   Privately-Owned ESL Schools May be Considered "Other Educational Institution[s]."

The parties disagree over the scope and meaning of the term "other educational institution" as it is used in section 541.204(b).  Plaintiffs contend that, because section 541.204(b) specifically identifies only two types of "other educational institutions"—"special schools for mentally or physically disabled or gifted children" and "post-secondary career programs," the regulation creates an exclusive and exhaustive list of possible "other educational institution[s]."  Id.  And, because defendants' English language learning centers are neither type of listed institution, they cannot possibly be "other educational institution[s]" and thus cannot be "educational establishment[s]."  In contrast, defendants contend that section 541.204(b)'s definition of "other educational institution" is illustrative rather than exhaustive and that their English language learning centers can and do qualify as "other educational institutions," and thus are "educational establishment[s]."

i.   ESL Schools are not "Post-Secondary Career Programs."

As an initial matter, ESL schools are not "post-secondary career programs."  First, the fact that an institution is "licensed by a state agency responsible for the state's educational system" or is "accredited by a nationally recognized accrediting organization for career schools" does not make that organization a "post-secondary career program" within the terms of the regulation.  29 C.F.R. § 541.204(b).  Instead, those two factors are part of the test for whether a "post-secondary career program" is an "educational institution."  Id.  Second, because the DOL's regulations do not offer a special definition of the term "post-secondary career program," an ESL

school, if it is to be considered a "post-secondary career program," must fit within the plain and ordinary meaning of that phrase.  See New York Currency Research Corp. v. Commodity Futures Trading Comm'n, 180 F.3d 83, 92 (2d Cir. 1999) ("Construing a regulation is similar to interpreting a statute; that is, we begin by examining its language.").

As a matter of general understanding, a "post-secondary career program" provides technical or vocational training to individuals, usually adults, seeking entrance or advancement in a particular field of work.  For example, schools offering an automotive technician program, Franklin v. Breton Int'l, Inc., 06 cv 4877 (DLC), 2006 WL 3591949, at *4 (S.D.N.Y. Dec. 11, 2006), providing instruction in the operation of over-the-road tractor trailers and trucks, Gonzales v. New England Tractor Trailer Training Sch., 932 F. Supp. 697, 702 (D. Md. 1996)[2], and providing "technical instruction and professional development to students seeking careers as automotive, diesel, collision repair, motorcycle, and marine technicians," Opinion Letter Fair Labor Standards Act (FLSA), 2006 WL 3406601, at *1 (Department of Labor Oct. 26, 2006), qualify as "post-secondary career programs."[3]  While proficiency in English is likely a prerequisite for many jobs and an advantageous qualification for many more, it is a skill of a different kind than, for example, automotive repair or truck driving.  English proficiency classes are not designed to train someone for work in a specific occupation, but rather to provide an

---

[2] While Gonzales, 932 F. Supp. at 702, was decided under a prior version of the current DOL regulation, the present regulation, regarding the standard test for "teachers," is unchanged from the prior regulation, "with the exception of the deletion of the requirement that the employee's work require the consistent exercise of discretion and judgment, a requirement that . . . engendered significant confusion."  Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 68 FR 15560-01, 2003 WL 1617356 (Department of Labor Mar. 31, 2003).

[3] "Statutory interpretations contained in DOL opinion letters, as opposed to those arrived at after formal agency adjudication or notice-and-comment rulemaking, are not binding authority [], and do not command Chevron deference."  Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 149 (2d Cir. 2008) (internal citations omitted).  They represent, however, "a body of experience and informed judgment to which courts and litigants may properly resort for guidance."  Id. (quoting Gualandi v. Adams, 385 F.3d 236, 243 (2d Cir. 2004) (internal quotation marks omitted).

individual of any age with skills to participate in any English speaking environment across the gamut of his or her life, whether it is social or occupational. It would stretch the plain and ordinary meaning of the phrase "post-secondary career program" to conclude that ESL programs fit within that express category of "other educational institution[s]."

ii.     ESL Schools May Qualify as "Other Educational Institution[s]."

The conclusion that ESL schools are not "post-secondary career programs" does not mean that they cannot otherwise be "other educational institution[s]." To the contrary, the Court agrees with defendants that section 541.204(b)'s definition of the term "other educational institution" is illustrative, not exclusive or exhaustive. In other words, the term "other educational institution[s]" is not limited to only "special schools for mentally or physically disabled or gifted children" and "post-secondary career programs." See Franklin, 2006 WL 3591949, at *3 ("An 'educational establishment' at which exempt teaching professionals are employed includes not only 'elementary or secondary school system[s]' and 'institution[s] of higher education,' but also 'other educational institution [s],' *such as* special schools or post-secondary career programs.") (emphasis added). Instead, the language of section 541.204(b) permits other organizations that may not fit squarely into either illustrative category, such as an ESL program, to qualify as an "other educational institution."

First, the plain meaning of the language used in section 541.204(b), particularly the use of the word "includes," conveys that the term "other educational institution" is an open-ended category that incorporates, but is not limited to, the two types of institutions listed. The dictionary definition of the word "include" is: "to place, list, or rate as a part or component of a whole or of a larger group, class, or aggregate." Webster's Third New International Dictionary (2002). Moreover, courts have understood the use of the word

"includes" or "including" to "cover or convey a non-exhaustive listing of items."  Cardona v.
Maramont Corp., 43 Misc. 3d 1230(A) (N.Y. Sup. Ct. 2014); see also Doniger v. Rye Psychiatric
Hosp. Ctr., Inc., 122 A.D.2d 873, 877 *lv. denied* 68 N.Y.2d 611 (2d Dep't 1986) ("The word
'including,' when followed by a list of examples, is designed to broaden the concept being
defined."); Willheim v. Murchison, 342 F.2d 33, 42 (2d Cir. 1965) ("Definitions in securities and
other legislation often use the word 'include' out of abundant caution, and this serves a clear
purpose when one or more of the things stated as included would not be so in the ordinary
meaning of the term defined . . . .").

          Second, an analysis of the semantic structure of section 541.204(b) reinforces the
conclusion that the DOL intended the term "other educational institution" to have a broader
meaning.  For example, in the first sentence of section 541.204(b), the DOL uses the word
"means" to define an "educational establishment:" "[t]he term 'educational establishment' *means*
an elementary or secondary school system, an institution of higher education or other educational
institution."  29 C.F.R. 541.204(b) (emphasis added).  That definition is plainly exclusive and
all-encompassing.  If the DOL had intended the definition of "other educational institution" to be
similarly exclusive, as plaintiffs argue it is, the DOL would have used "means" (or a word of
similar import) instead of "includes" to define it.  The DOL's decision to use two different words
to define two different terms within the same regulatory subsection conveys an intention to make
some definitions exclusive and others illustrative.  In Groman v. Comm'r of Internal Revenue,
302 U.S. 82, 86 (1937), the Supreme Court adopted a similar understanding of the construction
of section 112(i) of the Revenue Act of 1928, explaining that "when an exclusive definition is
intended the word 'means' is employed . . . whereas here the word used is 'includes.'"

And, third, a broader construction of the term "other educational institution" is supported by the "broad definition of teaching found in the regulations." Fraternal Order of Police, Lodge 3 v. Baltimore City Police Dep't, 1996 WL 1187049, at *14 (D. Md. Oct. 30, 1996). For example, 29 C.F.R. § 541.303(a) construes the FLSA's "professional capacity" exemption to include "any employee with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge." Courts have read that phrase to capture instructors who "do not teach in a traditional educational institution and do not teach basic education courses." Id. Because the DOL applies a correspondingly broad understanding of "teaching" within the same exemption, it is sensible to interpret the term "other educational institution" to include more than just "special schools for mentally or physically disabled or gifted children" and "post-secondary career programs."

In sum, the "terms and spirit" of the DOL's regulations "plainly and unmistakably" allow for the possibility that teachers at an ESL school may qualify for the "professional capacity" exemption. Chen, 798 F.3d at 81.

b.  Zoni Language Centers are "Other Educational Institution[s]."

Having established that an ESL program may qualify as an "other educational institution" under section 541.204(b), the remaining question is whether Zoni Language Centers actually are "other educational institution[s]." Section 541.204(b), however, does not explain what makes an organization an "other educational institution." It lists two factors "relevant for determining" whether a "post-secondary career program" is an "educational institution:" (1) is it "licensed by a state agency responsible for the state's educational system;" and, (2) is it "accredited by a nationally recognized accrediting organization for career schools." 29 C.F.R. § 541.204(b). But, it is not clear that determining whether an organization is an "other educational

institution" based on those two factors alone is adequate where the organization at issue is not a "post-secondary career program."  For example, in two cases where a central question was whether certain organizations, which were not "traditional schools," were "educational establishments," the presiding courts considered a range of different factors when making their determinations.  Escobedo v. Constr. Laborers' Educ., Training & Apprenticeship Fund of Minnesota & N. Dakota, 11 cv 3653 (ADM) (JJK), 2012 WL 4838880, at *5-6 (D. Minn. Oct. 11, 2012); Astor v. United States, 79 Fed. Cl. 303, 316-17 (2007).

In Astor v. United States, the Court of Federal Claims reviewed three factors in deciding whether the Federal Law Enforcement Training Center (the "FLETC"), a bureau within the Department of Homeland Security, was an "educational establishment" for purposes of the "professional capacity" exemption.  79 Fed. Cl. at 316-17.  The factors that that court considered were: (1) are the students enrolled in the school or program "seeking an educational degree or its equivalent, a type of license, or continuing education credits;" (2) does the non-traditional school have strong "accreditation credentials;" and, (3) are the instructors "required to possess any teaching credentials, such as degrees in education or teaching experience, or education beyond a high school degree."  Id.  Because the students attending the FLETC did no obtain degrees or licenses after completing courses, because the accreditation FLETC received was from a newly created Federal Law Enforcement Training Accreditation board, which was not a "nationally recognized accrediting organization for career schools," and because FLETC instructors were not required "to possess any of the credentials normally required of academic teachers," the FLETC did not qualify as an "educational establishment."  Id.

Likewise, in Escobedo v. Constr. Laborers' Educ., Training & Apprenticeship Fund of Minnesota & N. Dakota, a court in the District of Minnesota assessed whether a

construction laborers' education, training, and apprenticeship fund was an "educational establishment" by looking at whether the fund was licensed or accredited and then applying an additional six-factor test.  2012 WL 4838880, at *5.  The six factors the court considered there were: "(1) the title of employees; (2) the certifications required of teachers; (3) the formality of courses; (4) the granting of certificates or degrees; (5) the organization's charter; and (6) the teacher's involvement in organizing, communicating and delivering curriculum."  Id. at *6.  The court ultimately concluded that the fund was an "educational institution," even though it was not accredited, because it was properly licensed and met many of the additional factors, including that the courses were administered like school courses and that the employees were labeled "instructors" and were required to obtain necessary training and teaching certificates.  Id.

After considering Escobedo and Astor, as well as other relevant case law and the DOL's regulations, the Court concludes that it should consider the two factors listed in section 541.204(b) regarding "post-secondary career programs" as well as Escobedo's six-factor rubric to determine whether the Zoni Language Centers are "other educational institution[s]" and thus are "educational establishment[s]."  While both the Astor and Escobedo tests comprise factors that are highly relevant to determining whether an organization that is not a traditional school is an "educational establishment," the Escobedo test is more comprehensive.  Because nothing in the DOL regulations or the FLSA compel the conclusion that any one factor is conclusive, the Court bases its ultimate determination on a totality of the following eight factors: (1) the title of employees; (2) the certifications required of teachers; (3) the formality of courses; (4) the granting of certificates or degrees; (5) the organization's charter; (6) the teacher's involvement in organizing, communicating and delivering curriculum; (7) whether the organization is licensed

by a state agency responsible for the state's educational system; and, (8) whether the organization is accredited by a nationally recognized accrediting organization.

First, the FAC does not describe how Zoni's customers address plaintiffs during class time or how Zoni identifies its own employees. But, plaintiffs continually refer to themselves in the FAC as "ESL teacher[s]" or "teachers of English as a second language." (FAC ¶¶ 44, 63, 80, 95, 114, 131). While this is some evidence that the Zoni Learning Centers are "educational institution[s]," the Court does not afford it great weight because this factor provides little insight into whether the language centers actually function like schools and, in this case, captures only what plaintiffs call themselves. See, e.g., Escobedo, 2012 WL 4838880, at *6 (noting that an organization operating certain educational programs, which was an "educational establishment," labeled its employees "instructors"); Wilks v. District of Columbia, 721 F. Supp. 1383, 1386 (D. D.C. 1989) (noting that each facility at issue, which were "educational institutions," were "headed by a person with the title of 'principal'").

Second, the FAC does not allege each individual plaintiff's educational qualifications, but does allege that Zoni's "teachers" are not required to possess a teaching certificate or to have completed teaching coursework. (FAC ¶ 40). Nevertheless, the New York State regulations under which Zoni Language Centers are certified have significant requirements for teachers providing instruction in English as a second language. In resolving this motion, the Court took judicial notice of two certifications from the New York State Department of Education regarding Zoni Language Centers. Exhibit A of the Nieto Declaration is an "ESL School Certificate" presented to Zoni Language Center, Inc. stating that it "has met the requirements for the New York State English as a Second Language School Registry and is certified to operate." Exhibit B of the Nieto Declaration states the same with regard to Zoni

Language Center – Flushing, LLC.  The certifications are valid through March 2018 and February 2017 respectively.

Both of those "ESL School Certificate[s]" were issued "[u]nder the terms of section 5001 through 5010 of the Education Law of the State of New York."  (Nieto Decl. Ex. A, B).  New York Education Law § 5001(1)(b) defines a "certified English as a second language school," or "certified ESL school," as a "school conducted for-profit which provides instruction in English as a second language and which accepts no public funds and is certified pursuant to paragraph f of subdivision four of this section."  It then states that such "certified ESL schools" are subject to an "alternate licensing provision" to be promulgated in other regulations.  New York Education Law § 5001(4)(f).  The New York State regulation relevant here is New York Compilation of Codes ("NYCRR") Section 126.10.  That section describes the "alternate licensing provision" and includes the requirement that:

> [t]eachers providing instruction in English as a second language programs at a nonpublicly funded ESL school shall have been awarded a baccalaureate or equivalent degree from an institution licensed or recognized by the department; and have successfully completed either an English as a second language training program recognized by the department or one year of teaching experience in an English as a second language program.

8 NYCRR § 126.10(j)(3)(iii)(a).  It also provides for a "variance" from such requirements if the Commissioner of Education finds that "the applicant possesses sufficiently unique and exceptional training and/or experience that are substantially the equivalent of the requirements set forth in clause (a) of this subparagraph."  8 NYCRR § 126.10(j)(3)(iii)(b).  ESL schools seeking initial certification from New York State must submit evidence, satisfactory to the Commissioner, showing that it has met those personnel requirements.  8 NYCRR § 126.10(j)(2)(i)(b)(6).

The judicially noticed fact that the Zoni Learning Centers at issue here are certified by the New York State Department of Education is not evidence that each plaintiff has a college degree or has completed an ESL training program. Moreover, because this is a motion to dismiss, the Court must accept as true plaintiffs allegations that Zoni does not require its teachers to have teaching certificates or to have completed teaching coursework. However, the Commissioner of Education's regulations establish that "teachers providing instruction in English as a second language" in a program such as this one "shall have been awarded a baccalaureate or equivalent degree . . . ." 8 NYCRR § 126.10(j)(3)(iii)(a). And the judicially noticed certification by the New York State Department of Education attests to the defendants' compliance with that regulation. It is the organization itself, not any individual plaintiff, that is being evaluated under this prong of the "professional capacity" exemption. The requirement that teachers working at Zoni must have a "baccalaureate or equivalent degree," even if plaintiffs were not required to have additional teaching certificates or experience, is strong evidence that Zoni Language Centers are "educational institution[s]." See, e.g., King v. United States, 119 Fed. Cl. 277, 288-89 (2014), aff'd, 627 F. App'x 926 (Fed. Cir. 2016) (noting that instructors at Customs and Border Patrol Academy, which was an "educational establishment," were "required to undergo extensive training and certification before becoming instructors"); Escobedo, 2012 WL 4838880, at *6, (noting that "instructors" were "required to obtain the necessary training and certificates to teach their various courses"); Astor, 79 Fed. Cl. at 317 (noting that instructors at the Federal Law Enforcement Training Center, which was not an "educational institution," were "not required to possess any teaching credentials, such as degrees in education or teaching experience, or education beyond a high school degree").

Third, according to the facts alleged in the FAC, the courses offered at Zoni Language Centers are very similar to courses offered at traditional schools.  For example, teachers are required to incorporate speaking, writing, listening, and reading exercises into every lesson plan, to teach from books provided by defendants, to enforce specific rules of conduct on their students, and to give midterm and final examinations.  (FAC ¶¶ 41 (a)-(c), (p)).  Those school-like formalities are strong evidence that defendants' learning centers are "educational institution[s]."  See, e.g., Escobedo, 2012 WL 4838880, at *6 (noting that "courses are administered like school courses, lasting several weeks, often requiring prerequisite courses, and culminating with an assessment or examination"); Wilks, 721 F. Supp. at 1386 (noting that teachers at the facilities in question "conduct formal classes of instruction in Basic Adult Education").

Fourth, the FAC does not allege that participants are awarded an educational degree, a license, or continuing education credits for completing a Zoni ESL course, but does allege that enrollees receive certificates.  (FAC ¶¶ 38-39).  Other courts have given this factor great weight during their analyses of whether an employer's organization qualifies as an "educational institution."  See, e.g., Astor, 79 Fed. Cl. at 316 (noting that law enforcement officer who attend the Federal Law Enforcement Training Center training do not receive any degree, license, or continuing education credit); Muller v. Am. Mgmt. Ass'n Int'l, 368 F. Supp. 2d 1166, 1168 (D. Kan. 2004) (noting that customers attending non-profit corporation's continuing educational courses, which was an "educational institution," were awarded continuing education credits).  Because Zoni Learning Centers do provide some kind of certificate, although not a degree or professional license, to enrollees upon completion of an ESL course, this factor is some evidence that Zoni Language Centers are "educational institution[s]."

Fifth, the FAC does not allege any information about Zoni's charter, except for certain allegations that make it appear as though Zoni is a for-profit corporation. (FAC ¶¶ 4, 26, 29). Accordingly, the Court considers the "for-profit" or "not-for-profit" status in the light most favorable to plaintiffs. The fact that an organization is "for-profit" is, by the express terms of 29 C.F.R. 541.202(b), not relevant to determining whether it is an "educational institution." Nevertheless, because there are no facts showing that Zoni was charted expressly for educational purposes, this factor cuts against holding that Zoni is an "educational institution." See, e.g., Escobedo, 2102 WL 4838880, at *6 (noting that the organization was "chartered for the purpose of operating a 'school and education, training, and apprenticeship programs'"); Muller, 368 F. Supp. 2d at 1176 (noting that the corporation "was chartered as an educational organization under the auspices of the State University of New York").

Sixth, the FAC alleges facts showing that plaintiffs are at least somewhat involved in organizing, communicating, and delivering curriculum. For example, plaintiffs allege that they attend staff meetings and professional development workshops and spend significant time outside of the classroom preparing their own lessons. (FAC ¶¶ 41(d)-(e); 47, 49, 68, 84, 99, 120, 134). However, the FAC also alleges that defendants require plaintiffs to follow "strict teaching models," that plaintiffs are observed by defendants to ensure that they comply with such models, and that defendants provide plaintiffs with the books and other tools they need to perform their jobs. (FAC ¶¶ 41(a), (d), (n)). Because the court in Escobedo found it significant that the teachers there were involved in "course development as well as delivering course material," 2012 WL 4838880, at *6, the fact that the FAC alleges that plaintiffs were somewhat involved in organizing, communicating, and delivering curriculum is some evidence that the Zoni Language Centers are "educational institution[s]."

Seventh, as already discussed, Zoni Learning Centers are certified to operate as "ESL Schools" by the New York State Department of Education.  (Nieto Decl. Ex. A, B). Plaintiffs argue, however, that the Court should afford little weight to the fact that Zoni is licensed by the State of New York because private ESL schools like Zoni are certified under alternate licensing requirements.  While it is true that "nonpublicly funded ESL schools," are subject to alternate licensing provisions, those provisions are extensive.  For example, in order for an ESL school to be initially certified they must submit to the state:

> (1) sample enrollment agreements, which meet the requirements in paragraph (6) of this subdivision, used for each English as a second language curriculum offered by the school;
> (2) a complete description of the content of all English as a second language curricula offered by the school in a form prescribed by the commissioner;
> (3) a description of refund policies which pertain to English as a second language curricula in the event a student fails to enter, withdraws or is discontinued from instruction;
> (4) educational and administrative policies and procedures that are provided students in English as a second language curricula upon enrollment;
> (5) disclosures required to be made to students, pursuant to paragraph (5) of this subdivision;
> (6) evidence, satisfactory to the commissioner, that the school meets the requirements relating to personnel in paragraph (3) of this subdivision;
> (7) evidence, satisfactory to the commissioner, that the school meets the requirements relating to facilities and equipment in paragraph (4) of this subdivision; and,
> (8) an unaudited statement of revenue, as prescribed by the commissioner, for the previous fiscal year.

8 NYCRR § 126.10(j)(2)(i)(b).  And, even if these licensing requirements are significantly less onerous than those for "private career schools," section 541.204(b) asks only "whether the school is licensed by a state agency responsible for the state's educational system," which Zoni Language Centers are.  29 C.F.R. § 541.204(b).  The Court considers the fact that Zoni Language

Centers are licensed and certified by the New York State Department of Education to be strong evidence that they are "educational institution[s]." See, e.g., Franklin, 2006 WL 3591949, at *4 (Apex, a post-secondary career program that was an "educational establishment," was licensed by the New York State Education Department).

Lastly, the Court has taken judicial notice of the fact that the Zoni Learning Centers are accredited by the Accrediting Council for Continuing Education and Training, the ACCET, (Nieto Decl. Ex. E), as well as the fact that the United States Department of Education website lists the ACCET as one of the "regional and national accrediting agencies recognized by the Secretary as reliable authorities concerning the quality of education or training offered by the institutions of higher education or higher education programs they accredit," http://www2.ed.gov/admins/finaid/accred/accreditation_pg6.html.  The US Department of Education appears to limit its "recognition" of ACCET's accreditation to schools that "offer continuing education and vocational programs that confer certificates or occupational associate degrees, including those programs offered via distance education." Id.  Because the FAC alleges that Zoni does in fact offer certificates to enrollees who complete its ESL courses, the Court concludes that the US Department of Education does "recognize" ACCET's accreditation of programs like Zoni.  As a result, the Court concludes that Zoni was accredited by "a nationally recognized accrediting organization." 29 C.F.R. § 541.204.

Plaintiffs argue that the Court should give the fact of Zoni's accreditation very little weight because Zoni only received its initial accreditation from ACCET on December 15, 2013 and because one plaintiff, Kenya Brown, started working at Zoni a year or more prior to that date.  Plaintiffs do not explain why the date of the accreditation impacts the weight a Court should give this factor.  Instead, they cite to Astor as support for the proposition that "recent . . .

accreditation is not a sufficient substitute for the accreditation of a 'nationally recognized accrediting organization for career schools' cited in the DOL regulations."  79 Fed. Cl. at 317. However, in that case, the FLETC received its initial accreditation more than a year *after* the plaintiffs in that case brought their action.  Id.  Here, Zoni was accredited for almost two years before plaintiffs filed their complaint.  Moreover, the fact that Ms. Brown worked for Zoni prior to its accreditation is not an adequate reason to discount Zoni's accreditation credentials, especially because Ms. Brown's tenure with Zoni lasted at least another two years after it was accredited.  (FAC ¶ 79).

Because other courts have given significant weight to the fact that organizations are accredited, this judicially noticed fact favors holding that Zoni Language Centers are "educational institution[s]."  See, e.g., Bretton v. Compass Career Mgmt., LLC, 13 cv 663 (SSV), 2015 WL 349270, at *5 (E.D. La. Jan. 26, 2015) (noting that Compass, a career college that was an "educational institution," was "accredited by a nationally recognized accrediting organization for career schools"); Franklin, 2006 WL 3591949, at *4 (noting that APEX was accredited by the Accrediting Commission of Career Schools and Colleges of Technology).

Considering all eight of these factors together, the Court concludes that the Zoni Language Centers at issue here are "other educational institution[s]" within the meaning of 29 C.F.R. 541.202(b) and thus are "educational establishments" within the meaning of 29 C.F.R. 541.303(a).  Although they are not "post-secondary career programs," defendants' ESL schools share significant attributes with "post-secondary career programs" that other courts have found to be "other educational institution[s]," i.e. they are licensed and certified to operate by the New York State Department of Education and are accredited by a "nationally recognized accrediting organization."  Similarly, Zoni Language Centers are not "traditional schools," but they share

significant attributes with "traditional schools," i.e. Zoni's teachers were required by State law to have baccalaureate or equivalent degrees, Zoni's classes are run formally, with homework and final examinations, and Zoni mandates that its teachers are observed, reviewed, and trained and that they follow strict teaching methods.  Mindful that FLSA exemptions are to be narrowly construed against the employer, the Court nevertheless concludes that plaintiffs, who teach English language courses at Zoni Language Centers, "plainly and unmistakably" fit within the "terms and spirit" of the FLSA's "professional capacity" exemption.  Chen, 798 F.3d at 81.  As a result, plaintiffs are exempt, under section 213(a) of the FLSA, from the minimum wage and overtime provision of the statute and plaintiffs FLSA claims are, therefore, dismissed with prejudice.

III.     NYLL Claims.

A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. section 1367(a), which provides in pertinent part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Subsection (c) provides that a district court "may" decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3).

The Second Circuit has held that:

in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.

<u>Valencia ex rel. Franco v. Lee</u>, 316 F.3d 299, 305 (2d Cir. 2003) (quoting <u>Carnegie–Mellon</u>

<u>University v. Cohill</u>, 484 U.S. 343, 349-50 (1988)).  Here, the Court has dismissed each

plaintiff's FLSA claims.  Because each plaintiff has only New York Labor Law claims

remaining, judicial economy, fairness, convenience and comity will be served best by declining

to exercise supplemental jurisdiction over each plaintiff's remaining state law claims and,

accordingly, all those claims are dismissed without prejudice.

CONCLUSION

        Defendants' motion to dismiss plaintiffs' FLSA minimum wage and overtime

claims is GRANTED.  (Dkt. 17).  The Court declines to exercise supplemental jurisdiction over

each plaintiff's remaining state law claims and those claims are dismissed without prejudice.

The Clerk is directed to enter final judgment for the defendants and close the case.

        SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:  New York, New York
      May 18, 2016